THAMES *v.* THAMES

No. 50656 March 10, 1958 100 So. 2d 868

*John E. Mulhearn,* Natchez, for appellant.

*Emmette P. Allen,* Brookhaven, for appellee.

McGehee, C. J.

This suit involves the tragic consequences of a broken home where both the right to a divorce and the custody of two little girls are at issue between their natural parents. The father and mother were married on May 21, 1949, at Natchez, Mississippi, where they continued to live. On May 19, 1951, one of the little girls, Dana Jean Thames, was born, and on March 16, 1954, the other, Peggy Joan Thames, was born, both having been born of the said marriage.

Prior to June 1956, the appellant, Mrs. Lyvell Thames, sued the appellee, Doyle Thames, for a divorce on the ground of "habitual cruel and inhuman treatment." Section 2735, Sub-Section 7, Code of 1942. The suit was returnable to the June 1956 term of the Chancery Court of Adams County. After the defendant in that suit filed an answer and cross bill, the parties effected a reconciliation and resumed their marital relationship on August

29, 1956. But on October 17, 1956, the parties again became separated, and with the result that Mrs. Thames filed another suit, alleging "habitual cruel and inhuman treatment", and asking for support for herself and children as alimony pendente lite and permanent alimony, and also asking for the allowance of an attorney's fee. A temporary order was entered requiring the husband to pay alimony pendente lite for the support of the two children in the amount of $25 monthly, and to pay the complainant's attorney the sum of $50 as a reasonable attorney's fee for the pendente lite hearing.

The defendant Doyle Thames in his answer denied that he had been guilty of the habitually cruel and inhuman treatment complained of, and denied that the complainant was entitled to any permanent alimony for either the support of herself or the children, and denied that she was entitled to the allowance of a reasonable attorney's fee for prosecuting the suit on its merits. He then made his answer a cross bill and sought a divorce for himself on the ground that after he and his wife resumed their marital relation on August 29, 1956, she continued to come in late at night with the smell of beer on her breath; that she danced with one Mr. Heygood at a place where beer was sold in Pike County, and where she admitted having drunk two cans of beer on that occasion, which was the evening of the celebration of their reconciliation, and the appellee likewise admitted having drunk two cans of beer on the same occasion.

Prior to their first separation, there was considerable community gossip about a nearby neighbor being seen at the home of the appellant at times when her husband was away working at the International Paper Mills at Natchez, and there was testimony that the appellant had been seen to go to the home of this neighbor while his wife was away at work. No witness gave any direct testimony of any immoral conduct on the part of Mrs. Thames. Moreover, her alleged wrongful association

with this neighbor or any other man was all condoned by the reconciliation which occurred on August 29, 1956. They lived together from that date until they finally separated on October 17, 1956, as aforesaid. During that interval she became pregnant and this child was due to have been born in July 1957, following the hearing on her second bill for divorce in February 1957.

The visiting neighbor above referred to was never seen at the home of the appellant except on one occasion after the reconciliation, when he and his wife were invited to go home with the appellant and the appellee for coffee from the church. The appellee did testify that on one occasion in Pike County where several persons were gathered, drinking beer and dancing, he saw his wife and Mr. Heygood leave together, and said "I followed them up the other side of Magnolia and they switched off on a side road and got away." Q. "Who switched off?" A. "Her brother. They were in her brother's car." Q. "Who was in the car?" A. "The whole bunch. Her brother and his wife, her and Heygood." It is not clear from the record as to whether or not this occurred during the period of the separation of the appellee and the appellant. In other words, there was no clear and convincing proof of any immoral acts following the reconciliation, or prior thereto, to sustain the ground on which the appellee obtained his divorce on his cross bill in the second suit. In fact, no witnesses testified as to any immoral conduct on her part after her reconciliation with her husband on August 29, 1956, or at any other time, as aforesaid, and the evidence in our opinion is wholly insufficient to justify the divorce granted to him and the finding that "the allegations of the cross bill have been fully sustained by the evidence * * *".

Although different on its factual situation, it was said in the case of McCraney v. McCraney, 208 Miss. 105, 43 So. 2d 82: "This alleged ground for divorce is one involving moral turpitude, constitutes a bar to the re-

covery of alimony when the wife is the offending spouse, and the rule is, therefore, a wholesome one which requires that the proof of such a charge shall be clear and convincing.''

■ ■ Since there was a reconciliation between the parties on August 29, 1956, it follows that every fact and circumstance testified to by the several witnesses as to what may have occurred while the parties lived on De Soto Street in Natchez, and which was prior to their first separation, was completely condoned when they resumed their marital relation on that date and lived together as husband and wife until October 17, 1956, the date of their second separation.

■ ■ During the period last aforesaid, the appellant became pregnant with her third child by the appellee, and while he testified that he did not know whether he was the father of the child or not, he admited that he could have been, but said that he did not believe that he was. He thus accused his wife of infidelity in conversation with her mother, but admitted to his said mother-in-law that he just did not know, and could not prove it, but that he did not believe that he was the father of the child. In other words, he admitted a course of conduct of making frequent accusations of his wife's infidelity, while admitting that he could not prove his charges. These accusations, according to the undisputed testimony of the wife, caused her to become upset and nervous, and her physical well-being to be generally impaired.

It was held in the case of Hibner v. Hibner, 217 Miss. 611, 64 So. 2d 756, that false accusations of infidelity habitually made by one spouse against the other over a long period of time, without reasonable cause, constitutes such cruelty as to warrant the granting of a divorce. In the instant case, the husband freely admitted, as aforesaid, that he had no proof that he was not the father of the child that his wife was expecting in July

following the trial of this cause in February 1957, and yet he continued to contend that even though he and his wife were living together, and that he could have been the father of the child, he did not believe that he was.

We have concluded that the proof offered by the appellant was ample to entitle her to a divorce from the appellee on the ground alleged in her bill of complaint, and that such proof was virtually undisputed, if not admitted, by the appellee.

On the other hand, the appellee was not entitled to a divorce from the appellant on the ground of what may have transpired prior to their first separation or between the time of such separation and their reconciliation on August 29, 1956. Moreover, there was no proof whatever of any immoral conduct on her part after the reconciliation, or at any time prior thereto.

Each of the several neighbors who testified to any fact or circumstance that may have caused the appellee to suspicion any immoral conduct on the part of appellant confined their testimony to what they saw or did not see when the parties were residing on De Soto Street in Natchez prior to their first separation. The appellee testified that the appellant left his home on two occasions without notice being given him in advance, and if we should assume that this has reference to her action subsequent to the reconciliation, it would only constitute, at most, acts of desertion, if continued for such length of time as required by law prior to the filing of the cross bill, and would not be any proof of immorality.

The appellee and the husband of Mrs. Tapley did become concerned one afternoon about their wives not being at home, and finally learned that they had gone to a carnival. Neither did this action on the part of the appellant consist of clear and convincing proof of any immorality on her part.

It seems that the appellant also visited the place near Magnolia on one occasion during the period of the separa-

tion of the parties, and when it is admitted by her that she danced with other men. But since the appellee also went to this place to ascertain with whom the appellant was associating, he evidently took this circumstance into consideration when he later resumed his marital relationship with her, and assuming that her action was improper he condoned the same in the subsequent reconciliation.

Since the proof discloses that the appellee continued his habitually cruel and inhuman treatment of the appellant after their reconciliation and resumption of marital relations on August 29, 1956, and the proof wholly fails to establish the allegation of the cross bill as to any immoral acts committed by the appellant after the reconciliation, and since it is also true that no witness testified to any immoral conduct on the part of the appellant even prior to their first separation, we have concluded that the trial court was in error in denying the appellant a divorce on the ground of habitually cruel and inhuman treatment, and in granting the appellee a divorce on the alleged ground of adultery. A judgment will therefore be rendered here granting the appellant a divorce on the grounds alleged in her bill of complaint, and denying the appellee a divorce on the ground alleged in his cross bill.

From this it follows that the trial court was also in error in taking from the appellant the care and custody of Dana Jean Thames who was approximately six years of age at the time of the trial, and of Peggy Joan Thames who was approximately three years of age at the time of the trial. She was entitled to their custody as the natural mother of the children as against their natural father, and also as against their paternal grandparents, or either of them, to have their actual care and custody, the legal custody having been erroneously awarded to their father.

In view of the foregoing facts and circumstances, we are also of the opinion that the appellant was entitled to a reasonable attorney's fee in the trial court, and that both the testimony and the nature and character of the proceedings, and the nature and scope of the trial of the case on its merits, disclosed without any question that the sum of $250 would have been a reasonable attorney's fee to be allowed to the appellant.

In the case of Hibner v. Hibner, supra, the wife's claim for alimony and counsel fees was denied as it was in the instant case. The Court held in that case that the wife should be allowed a reasonable attorney's fee for the services of counsel in the lower court, plus fifty per cent thereof for his services in this Court, citing Castleberry v. Castleberry, 214 Miss. 94, 58 So. 2d 67. In the Hibner case the cause was reversed and remanded for the allowance by the trial court of a reasonable attorney's fee for the services of her counsel, one-half of which, when allowed, was to be paid to her in addition for the services of her attorney in this Court. But here the testimony was to the effect that a $250 fee was a reasonable one for the services of her counsel in the trial court, and since such testimony was not only undisputed, but it could not be reasonably said in view of the husband's reported income of $4,750 for the preceding year that any lesser amount should be allowed as an attorney's fee for the appellant's counsel in the trial court, a judgment will be rendered here in favor of the appellant for the said $250 for the services of her counsel on the trial, and one-half of the said amount allowed her for his services on this appeal.

Therefore, the decree granting the appellee a divorce is reversed and a judgment is rendered here granting the appellant a divorce under the undisputed proof made under her bill of complaint, and the decree awarding to the appellee the custody of the two children hereinbefore mentioned is also reversed and their custody is awarded

to their mother, and the cause is remanded only for the purpose of enabling the trial court to ascertain the needs and requirements of the wife and children for their support and maintenance in the light of what the court may find to be the ability of the appellee to pay. In other words, the cause is reversed and remanded for the same to be proceeded with in a manner not inconsistent with the foregoing views.

Reversed and remanded.

*Lee, Holmes, Arrington* and *Ethridge, JJ.*, concur.