455 So.2d 778 (1984)
Mary Ann Moore TORRENCE
v.
Quinton Alvin MOORE.
No. 55304.
Supreme Court of Mississippi.
September 5, 1984.
Harry L. Kelley, Jackson, for appellant.
Pat Donald, Morton, for appellee.
Before HAWKINS, PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
This case rises on appeal from the Chancery Court of Scott County, Mississippi. These parties were married each to the other on May 14, 1976. One son, Quinton Ryan Moore, was born to them on October 11, 1977. The parties separated July 7, 1980, and were divorced on grounds of irreconcilable differences on December 2, 1980. By agreement, they had joint custody of their son, with each of them being the paramount custodian for equal periods of time on a monthly basis. Both parties have now remarried to other people. Appellee has one child by his marriage, who was six months old at the time of the hearing, and two step-children, a boy aged eight and a girl aged five at the time of the hearing. The appellant has no children from her marriage to Mr. Torrence.
As their son approached school age, both parties sought modification of the custody arrangement as the alternating custody would be detrimental to the child during his school years. Appellant testified that it would be in the child's best interest to be in the custody of only one of the parents, and appellee testified to the same thing, except he conceded that it would be best for his son that one parent have custody of the child even if the appellant was granted custody though he preferred it.
At trial both sides conceded the fitness of the other. The issue, therefore, was squarely presented to the chancellor of what was in the best interest of the child.
The appellant relied on the presumption of the "tender years" doctrine, the fact that she was the mother of the child, and the testimony of Linda Wilbourn, Ph.D in clinical psychology, who testified that the child was experiencing anxiety about his unstable home environment and difficulty in adjusting to the other children in the home. Dr. Wilbourn testified further that traditionally the mother is the better custodian of a child up to the age of twelve or thirteen. She further opined that it is better *779 for a child to live with the mother than a stepmother.
Dr. Wilbourn's testimony was based on one interview with the child and with the appellant as well as a series of tests given to the child. She did not interview appellant's new husband, nor did she interview the appellee nor the appellee's new wife. On this background information, Dr. Wilbourn testified:
1. That a clinical history is important in diagnosis but her entire knowledge of the child came from that one session and her opinion, insofar as it is based upon individual factors is based upon the information gathered at that one session;
2. That her opinion is primarily based upon her predisposition toward maternal custody of young children;
3. That the fact that appellant frequently kept the child in the presence of appellant's father, who drank regularly and heavily, would not alter her opinion that appellant should be granted paramount custody of the child;
4. That the child's close emotional ties to his half-brother, stepbrother and stepsister would make no difference in her opinion that appellee should have the paramount custody of the child.
Dr. Wilbourn admitted that the child, Ryan, suffered no adverse effects as the result of living with his father, stepmother, stepbrother, stepsister and half-brother.
Appellant contends that the chancellor ignored the testimony of the expert. Appellant cites Ballard v. Ballard, 434 So.2d 1357 (Miss. 1983), and Cheek v. Ricker, 431 So.2d 1139 (Miss. 1983), which we appreciate to be sound law, but which are inapplicable to the facts of the present case.
Appellant urges that of the eleven factors to be considered in determining custody, as set out in Albright v. Albright, 437 So.2d 1003 (Miss. 1983), the chancellor ignored and did not consider the following six: (1) the age of the child; (2) the health and sex of the child; (3) the determination of the parent that has had the continuity of care prior to the separation; (4) which parent has the best parenting skills; (5) the emotional ties of the parent and the child; (6) other aspects being relevant.
Appellant also urges the novel idea that, all other factors being equal, the parent without children should be awarded custody over the parent that has other children. This is offered by the appellant for the limited function of serving as a "tie-breaker" as it were.
Appellee's testimony established evidence of a close and loving relationship between him and his son evidenced by the following: (1) that appellee has, over an extended period of time, taken his son on numerous hunting and fishing trips; (2) he has taught his son gun safety; (3) he has taught his son water safety and secured for him swimming lessons; (4) he has at all times seen to the religious and spiritual training of his son; (5) he has taught his son financial values through the granting of an allowance and the maintaining of a savings account; (6) he includes his son in a wide range of family activities which have included over the years numerous picnics, trips to the Gulf coast, trips to the state fair, eating out, riding horses, playing games, going to movies, Easter egg hunts, Christmas programs at the church, birthday parties, etc.; (7) he has provided for his family and his son, Ryan, a comfortable and suitable home in a wooded area near Morton which provides for the child a comfortable and safe environment in which to grow up; (8) he has made a concentrated effort to see that the educational needs of his son are met, one instance of which was his sending his son to kindergarten and paying all the expenses therefor at a time when the appellant wouldn't allow the child to attend kindergarten even at the father's expense; and (9) appellee gives his son individual attention, goes on walks with him and discusses the child's problems with him when he thinks the child is troubled.
Appellee has employment stability, having worked in construction for the past 12 years and with the same company for the past 4 years. He has advanced to a supervisory position in his company. Appellee is *780 a Sunday School teacher, superintendent of Sunday School classes, an administrative board member and on the council of ministries at his church. His son attends church with him on a regular basis when in his custody.

DID THE CHANCELLOR COMMIT ERROR IN AWARDING THE CUSTODY OF THE MINOR CHILD TO THE FATHER?

No. Two limiting factors have always been applied to the "tender years" doctrine and they are critical in this case. Amis, Divorce and Separation in Mississippi, (1957), Section 8.05, page 217, says:
In all cases where any child is of such tender age as to require the mother's care for its physical welfare, it should be awarded to her custody, at least until it reaches that age and maturity where it can be equally well cared for by other persons.
A child of 7 has been held by this Court to be long past the age prior to which it requires attention of such character from the mother. Duncan v. Duncan, 119 Miss. 271, 80 So. 697 (1919).
Since Dillard v. Wright, 19 Miss. 445 (1848), we have refused to disturb the finding of a chancellor on conflicting evidence unless it is clearly wrong. Even if we do not agree with the chancellor or might arrive at a different conclusion, if we cannot say with reasonable certainty that his findings were manifestly wrong and against the overwhelming weight of the evidence, we are still bound by his findings. Richardson v. Riley, 355 So.2d 667 (Miss. 1978).
In reviewing the record in the comprehensive verbal opinion rendered by the chancellor from the bench at the conclusion of this trial, we are unable to say that the chancellor did not consider all eleven of the determining factors cited by this Court in Albright, supra. We certainly cannot say that he ignored the six factors set out in appellant's brief.
It cannot be said that the chancellor disregarded the testimony of Dr. Wilbourn. When we consider all of the circumstances surrounding the testimony of that expert, we are of the opinion that the chancellor accepted her testimony, accorded it appropriate probative value, and then made his decision after a consideration of that testimony. In this regard, it cannot be said that the chancellor is in error because he refused to substitute his judgment as to the best interest of the child with the judgment of a professional witness. The ultimate determination of the best interest of the child is a determination to be made by the court. In his excellent bench opinion, the chancellor found that the advent of school age was a material change in circumstances that rendered the split custody of the child useless and even harmful to the child. The chancellor further found that, considering all of the evidence presented to him, the proof was overwhelming that the best interest of the child would be served by modifying the prior judgment of joint custody and placing the child in the custody of his father, the appellee. This he did, even though finding that either parent would be fit and suitable to have the care, custody and control of the child.
We cannot say this decision is manifestly wrong and certainly it is not against the overwhelming weight of the evidence. We cannot say that the chancellor did not properly apply the law to the facts as he found them. Therefore, we affirm the decision of the lower court.
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
PATTERSON, C.J., not participating.