# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-00564-SCT

*MARGARET SKINNER MERCIER*

*v.*

*STEVE MERCIER*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/30/96 |
| TRIAL JUDGE: | HON. WILLIAM ROBERT TAYLOR, JR. |
| COURT FROM WHICH APPEALED: | MARION COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | IRVING CONRAD MORD, II |
| ATTORNEY FOR APPELLEE: | LEIGH KENNINGTON BERRY |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 7/23/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/17/98 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Margaret Skinner Mercier appeals from a decision of the Chancery Court in Marion County awarding full physical custody of her daughter, Dusty Richelle Mercier, to Steve Mercier, the child's father. Aggrieved, Margaret Mercier brings this appeal assigning the following issue as error:

**I. WHETHER THE TRIAL COURT ERRED IN APPLYING THE *ALBRIGHT* FACTORS IN A CUSTODY CASE AND REFUSING TO AWARD PHYSICAL CUSTODY OF A SEVEN-YEAR OLD FEMALE TO HER MOTHER.**

## STATEMENT OF THE FACTS

¶2. Steve Mercier and Margaret Skinner Mercier were married on March 4, 1988. Dusty Richelle Mercier was born on April 13, 1989, and is the only child produced by this marriage. The parties separated on February 1, 1992, and were divorced on July 2, 1992. Joint legal and physical custody of Dusty was vested in Steve and Margaret, with each having primary custody every other week. Steve was ordered to pay $150 per month in child support and to secure and maintain medical insurance and major medical coverage for Dusty.

¶3. Following the divorce, Steve remarried. His new wife, Lisa, has one child, Sarah, who was nine years old at the time of trial. She resides with them full time. Steve has one other child, Brent Mercier, age seven at the time of trial. Brent lives with his mother. Additionally, Steve and Lisa were expecting a child at the time of this litigation.

¶4. Following the divorce, Margaret married Richard Hitt. At the time of the trial, she and Hitt had divorced and she was residing with her parents and her aunt and attending college working on a bachelor's degree in education.

¶5. On August 2, 1995, Steve filed a Petition to Clarify Final Decree of Divorce, alleging that Margaret had enrolled Dusty in a private academy against his advice and wishes. Margaret answered Steve's petition and counterclaimed that a material and substantial change in circumstances had occurred since the Final Decree of Divorce in that Dusty was now six years old and in school. Steve and Margaret both agreed that joint custody was impractical and not in Dusty's best interest.

¶6. Steve filed an amended petition making the same allegations as those asserted by Margaret in her petition. Both parties argued that they were the fit, suitable and proper persons to have full care and custody of Dusty.

¶7. Following a full trial on March 21, 1996, the chancellor found, upon admission of both parties, that there had been a material and substantial change in circumstances since the Final Decree of Divorce which adversely affected Dusty. The chancellor further found, pursuant to *Albright v. Albright*, 437 So.2d 1003 (Miss. 1983), that the best interests of the child would be served by granting Steve physical custody and control of Dusty, while granting legal custody to both Steve and Margaret, with Margaret having visitation rights. Additionally, the chancellor ordered Margaret to pay $100 per month in child support.

## STANDARD OF REVIEW

¶8. When reviewing a chancellor's decision, we will accept a chancellor's findings of fact as long as the evidence in the record reasonably supports those findings. *Perkins v. Thompson*, 609 So.2d 390, 393 (Miss. 1992). In other words, we will not disturb the findings of a chancellor unless those findings are clearly erroneous or an erroneous legal standard was applied. *Hill v. Southeastern Floor Covering Co.*, 596 So.2d 874, 877 (Miss.1992).

## DISCUSSION

## I. WHETHER THE TRIAL COURT ERRED IN APPLYING THE *ALBRIGHT* FACTORS IN A CUSTODY CASE AND REFUSING TO AWARD PHYSICAL CUSTODY OF A SEVEN-YEAR OLD FEMALE TO HER MOTHER.

¶9. When a court enters an order awarding custody of a child, that court holds continuing jurisdiction over the subject matter and the parties for the purpose of later modifications of that order. Miss. Code Ann. § 93-5-23 (Supp. 1996). Any order for joint custody may be modified upon the showing of a material change of circumstances adverse to the interest of the child. *Rutledge v. Rutledge*, 487 So. 2d. 218, 220 (Miss. 1986); *See also* Miss. Code Ann.§ 93-5-24 (6) (1994). In the case *sub judice*, the parties admitted that a material change in circumstances adverse to the interest of the child

had occurred. It was thus necessary for the court to determine the custody arrangement which would be in the best interest of the child. ***Newsom v. Newsom***, 557 So. 2d 511, 515-16 (Miss. 1990); ***Phillips v. Phillips***, 555 So. 2d 698, 700 (Miss. 1989). Margaret asserts the chancellor misapplied that law in the instant case.

¶10. The ***Albright*** factors are as follows:

　　1. Age, health, sex of the child.

　　2. Continuity of care prior to the separation.

　　3. Parenting skills and willingness and capacity to provide primary child care.

　　4. Employment of the parent and responsibilities of that employment.

　　5. Physical and mental health and age of the parents.

　　6. Emotional ties of the parent and the child.

　　7. Moral fitness of the parents.

　　8. The home, school, and community record of the child.

　　9. The preference of the child at the age sufficient, by law, to express a preference.

　　10. Stability of home and employment of each parent.

　　11. Other factors relevant to the parent-child relationship.

***Albright***, 437 So. 2d at 1005. The polestar consideration in custody matters is the best interest and welfare of the child, and the above stated factors are to be employed in the furtherance of that determination. ***Id.***

¶11. In the instant case, the chancellor found that factors 3, 4, 8, and 10 weighed in Steve's favor. The chancellor found the remaining factors, with the exception of factor 9, which is not applicable here, to weigh equally between the parties.

¶12. Margaret asserts that the chancellor erred when he concluded that factor number one, the age, sex and health of the child, weighed equally between the parties. She cites a litany of cases to support her proposition that if a mother is fit and a child, especially a female child, is of tender years, then the mother should be awarded custody. ***Buntyn v. Smallwood***, 412 So. 2d 236, 238 (Miss. 1982) (custody of female child of five years of age granted to mother); ***Kyzar v. Kyzar***, 248 Miss. 59, 157 So. 2d 770 (1963) (custody of three females and one male, ranging in age from one and one-half years old to nine years old, granted to mother); ***Brown v. Brown***, 237 Miss. 53, 112 So. 2d 556 (1959) (custody of four and one-half year old female granted to mother); ***Thames v. Thames***, 233 Miss. 24, 100 So. 2d 868 (1958); ***Scott v. Scott***, 219 Miss. 614, 631, 69 So. 2d 489 (1954) (custody of female five year old granted to mother); ***Kennedy v. Kennedy***, 222 Miss. 469, 76 So. 2d 375 (1954) (custody of four year old male granted to mother); ***Boswell v. Pope***, 213 Miss. 31, 56 So. 2d 1 (1952) (custody of three year and five month old female granted to mother); ***Miles v. Miles***, 111

Miss. 110, 71 So. 295 (1916).

¶13. The tender years doctrine on which Margaret relies was established by this Court in 1879 in *Johns v. Johns*, 57 Miss. 530 (1879) and is stated as follows:

> 'In all cases where any child is of such tender age as to require the mother's care for its physical welfare it should be awarded to her custody, at least until it reaches that age and maturity where it can be equally well cared for by other persons.'

*Brown v. Brown*, 237 Miss. 53, 58, 112 So.2d 556, 559 (1959)(*quoting Amis, Divorce and Separation in Mississippi* (1935), Sec 219, page 296).

¶14. The tender years doctrine has been gradually weakened in Mississippi jurisprudence to the point of now being only a presumption. *Law v. Page*, 618 So.2d 96, 101 (Miss. 1993). Today, the age of a child is simply one of the factors that we consider in determining the best interests of the child. *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983). In this case, Dusty was within weeks of her seventh birthday at the time of trial. The cases cited by Margaret in support of the proposition that, as a female in her tender years Dusty should reside with her mother, are all pre-*Albright* cases when the tender years doctrine was a rule rather than one of several factors to consider in determining custody. Furthermore, in each of these cases, the child was younger than Dusty, or there were several siblings, with at least one of them being younger than Dusty.

¶15. Margaret further alleges that the chancellor summarily dismissed the tender years doctrine without inquiry. We disagree. The chancellor addressed this issue when he noted that Dusty was no longer of tender years since she was nearly seven at the time of hearing. As stated supra, a child is no longer of tender years when that child can be equally cared for by persons other than the mother. We have held that a child of seven is long past the age that requires this type of special care from her mother. *Torrence v. Moore*, 455 So.2d 778, 780 (Miss. 1984)(*citing Duncan v. Duncan*, 119 Miss. 271, 80 So. 697 (1919)). Not only can other people care for Dusty as well as her mother, but the record reflects that Steve Mercier does care for Dusty as well as or better than her mother. We are satisfied that the chancellor sufficiently addressed the tender years doctrine by finding that it did not apply.

¶16. Not only do we find that the chancellor correctly evaluated the tender years doctrine, but we also find that he properly weighed the remaining *Albright* factors. The chancellor noted that Steve has a steady job and significant income while Margaret is a student living on a Pell grant, student loans, and part time jobs. In fact, Margaret has admitted that she is forced to rely upon the kindness of her kin to sustain Dusty and herself. While the income is certainly in Steve's favor, the record shows numerous other reasons why the *Albright* factors are weighted in Steve's favor. The chancellor found that Steve Mercier had better parenting skills and ability to provide primary child care, that his employment and responsibilities were more suited to the care of Dusty, that he could provide a more stable home environment for Dusty, and that Dusty's home, school and community record indicate that she should be with Steve.

¶17. Steve testified that he is the manager of a cable company where he has been employed for six years. He illustrated that his hours are flexible and that he is able to adjust his work schedule to meet Dusty's needs.

¶18. Steve further testified that either he or his present wife, Lisa Mercier, always take Dusty to school on time and pick her up on time. To the contrary, Margaret Mercier admitted that she has repeatedly checked Dusty out of school early because neither she, nor Dusty, like to wait in the car line. She also admitted that on at least one occasion, she had checked Dusty out before 11:00 a.m. for a "fun" day. The record also reflects that Margaret's work and school schedule do not permit her to take and pick Dusty up from school on Thursdays. Her elderly aunt, who lives with them, picks Dusty up on these days. When the elderly aunt is traveling, another family member provides Dusty with transportation to and from school.

¶19. Steve's home also seems to be more appropriate because he has been married to Lisa for three and a half years, and they provide a stable home life, with siblings, for Dusty. He shares in the responsibilities of raising Lisa's daughter, Sarah Mullins, who is 9. They also have visitation with his son Brent, and at the time of litigation Lisa was pregnant. The record reflects amity between Dusty and her siblings, Sarah and Brent. As the chancellor noted, Steve spends most evenings at home and his life seems to revolve around his family and his children.

¶20. While Margaret is not an unfit mother, she has not provided the stability that Steve provides. She has moved six times since her divorce from Steve. Subsequent to the divorce, she remarried Richard Hitt. She then left Hitt, stating in her complaint for divorce that he caused Dusty and her to suffer mental duress. There is conflicting testimony over whether or not she has subsequently been engaged to a man in McComb and broken that engagement. Margaret presently lives with her elderly parents. It is undisputed that Dusty has a close and loving relationship with her grandparents; however, we agree with the chancellor that Steve's household is more appropriate for a young child. While in Steve's home Dusty is cared for by Steve and Lisa. She interacts not only with her siblings, but with other children close to her age. Steve has ensured that Dusty is involved in child-oriented activities by enrolling her in gymnastics and T-ball. While in Margaret's care, Dusty seems to spend all of her time with her grandparents, her elderly aunt, or Margaret. Margaret has enrolled her in piano lessons; however, this one hour lesson every week is spent with another adult, her piano teacher. The record reflects that Steve's home is simply a happier, healthier home for a child. Perhaps this is why on more than one occasion Dusty has cried and Steve has had to physically force her to return to Margaret.

¶21. Not only does Steve ensure that Dusty is involved in child oriented activities, but he has shown that he is able to meet her emotional needs in other ways. After Margaret ended her tumultuous relationship with Richard Hitt, Steve sought professional counseling for Dusty to help her with emotional problems she exhibited. He is also providing guidance by rearing Dusty in a church-oriented environment.

¶22. All too often chancellors, as arms of the state, are forced to render difficult decisions when adults fail to act in the best interests of their children. In this case, the learned and compassionate chancellor got it right. His decree correctly balances the *Albright* factors and is not in error. We, therefore, affirm.

¶23. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., McRAE AND ROBERTS, JJ.,**

**CONCUR. McRAE, J., SPECIALLY CONCURS WITH SEPERATE WRITTEN OPINION JOINED BY ROBERTS, J. WALLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS AND SMITH, JJ.**

**McRAE, JUSTICE, SPECIALLY CONCURRING:**

**¶24.** Our polestar consideration in child custody cases must always be the best interests of the child. Given the evidence in the record viewed in light of the factors enumerated in *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983), the chancellor cannot be held in error for finding that seven-year-old Dusty Mercier was not a child of tender years and that her best interests would be served by awarding full custody to her father. His decision correctly keeps the tender years doctrine in its proper context as a mere guideline to consider in determining the best interests of only the youngest and most helpless infants and children. Our most recent pronouncements on the doctrine are premised on the modern view that we look to the best interests of the child and which parent can better meet the child's needs at a particular point in his life.

¶25. In *Chamblee v. Chamblee,* 637 So. 2d 850 (Miss. 1994), the most recent case where this Court has construed and rejected the tender years doctrine, we refused to accept a mother's argument that the chancellor erred in not following the doctrine when awarding custody of a four-year-old boy to his father. Reviewing the rise and fall of the doctrine, this Court stated:

> This rule dates back over a century to the case of *Johns v. Johns*, 57 Miss. 530 (1879), where this court stated, "In all cases where any child is of such tender age as to require the mother's care for its physical welfare it should be awarded to her custody, at least until it reaches that age and maturity where it can be equally well cared for by other persons." *Id.*Recent jurisprudence, however, has weakened this doctrine. *Cheek v. Ricker*, 431 So. 2d 1139 (Miss. 1983), states, "it hardly seems rational that the age of a child should per se lead to any particular result." *Id.*, at 1145. *Albright* similarly holds that the age of the child is but one factor to be considered in determining proper custody. *Albright* at 1005. **Any application in this case of whatever is left of the "tender years" doctrine is insufficient to find that the chancellor's award of custody was manifest error.**

*Chamblee,* 637 So. 2d at 861 (emphasis added). Further, in *Law v. Page*, 618 So. 2d 96, 100 (Miss. 1993), affirming the chancellor's order awarding a father custody of his fourteen- month-old son born out-of-wedlock, we noted that the tender years doctrine was not absolute; rather, it was a presumption and not a rule. *See also Faries v. Faries,* 607 So. 2d 1204, 1209 (Miss. 1992)(rejecting tender years argument to affirm chancellor's award of custody to father of six-year-old daughter and three-year-old son).

¶26. Our reliance on the tender years doctrine has eroded in recent years, properly focusing our concern on the best interests of the child without any per se restrictions as to which parent should have primary custody, based merely on the age or gender of the child or the gender of the parent. *See Caban v. Mohammed,* 441 U.S. 380 (1979)(rejecting New York's gender-based distinction between rights of unwed fathers and unwed mothers to block adoption of their illegitimate offspring). This reflects the realities of modern life where an increasing number of women work outside of the home,

returning to work within weeks after their babies are born. No longer is mother the primary care giver; rather, fathers are playing an increasing role in raising their children, regardless of the family circumstances. Many even emerge as the more nurturing and involved parent! In this case, the record indicates that the chancellor's primary consideration was the child's best interests, and he properly found the tender years doctrine inapplicable.

**ROBERTS, J., JOINS THIS OPINION.**

**WALLER, JUSTICE, DISSENTING:**

¶27. Because I believe that the majority opinion sets a dangerous precedent for custody cases, I respectfully dissent. The effect of the majority's decision today is to give paramount consideration to one parent's financial status when determining custody disputes. Additionally, the chancellor failed to give proper weight to the tender years doctrine.

¶28. Initially, I point out that it appears that the chancellor adopted, almost verbatim, Steve's Statement of Facts and Conclusions of Law as the final judgment of the court. As such, this Court "`must view the challenged findings of fact and the appellate record as a whole with a more critical eye to insure that the trial court has adequately performed its function." *Omnibank of Mantee v. United Southern Bank*, 607 So.2d 76, 83 (Miss. 1992)(*quoting* *Rice Researchers, Inc. v. Hiter*, 512 So.2d 1259, 1265 (Miss. 1987)).

¶29. When considering the *Albright* factors, the chancellor placed inordinate weight on onesingle factor, namely Steve's employment and income, which is significantly higher than Margaret's. I do not quarrel with the factual accuracy of the chancellor's reasons. However, I do find it disturbing that these reasons can be the primary basis upon which the decision to grant custody is made. It is true that Margaret, at the present time, cannot provide Dusty with all the material things that Steve is financially able to provide her. There is no proof that Dusty suffered in any manner from Margaret's lack of financial resources, and Margaret is able to provide Dusty with a loving environment surrounded by relatives who love and care for her.

¶30. The chancellor found that Margaret had not attempted to provide a better home for Dusty. He also praised Steve for continually moving to a bigger home. I fail to see how temporarily residing with loving and caring grandparents is not an attempt to provide a better home for a child. Margaret has placed Dusty in the most loving and secure environment available to her. In essence, Margaret was penalized for doing the exact same thing that Steve was praised for doing.

¶31. Margaret is attempting to better her and Dusty's lives by returning to school and obtaining a teaching certificate. In effect, today's decision penalizes Margaret for attempting to better provide for herself and her child. In our society it is common for the mother to forego or temporarily abandon a career outside the home in order to have children, or to care for children until they are old enough and mature enough to allow the mother to return to work, or to purposefully take a lower paying job that allows flexibility to participate in usual parenting activities. This usually results in the underemployment of the mother, which poses no significant problem or detriment to the mother as long as she and her husband remain married. However, should the couple divorce, it is often necessary for the now divorced ex-wife, but still mother, to acquire skills necessary to land a job in

today's competitive workforce with the view of being the sole breadwinner. One way to acquire such skills is through education.

¶32. A teaching certificate would provide Margaret with the advantages of competitive pay and hours and days off consistent with a child's schedule to allow maximum parental involvement in the child's life. This was disregarded by the chancellor, who instead, championed the managerial position enjoyed by the father that demands much more time away from the child than Margaret's planned teaching job would require. Today's decision unfairly penalizes divorced women, who interrupt careers to have children, stay at home with children, or take jobs that allow them to be available for their children. In effect, the majority has allowed the "shinier car, bigger house" analysis that the chancellor applied to become the determinative factor in this case, ignoring real life in the trenches.

¶33. The chancellor found it laudable that Steve has enrolled Dusty in child-oriented activities such as gymnastics and T-ball. On the other hand, Margaret has enrolled Dusty in piano lessons and involves Dusty in church activities several times a week. It is difficult to conceive a situation where activities such as gymnastics and T-ball should be given greater weight than church and learning to play a musical instrument. The chancellor also seems to place great emphasis on Steve's enrolling Dusty in extracurricular activities that solely involve other children. As a practical matter, Dusty spends much more time than this with other children at school, not to mention the myriad of extracurricular activities associated with school.

¶34. A reading of the Final Judgment issued by the chancellor reveals that he gave little or no weight to Dusty's age, the first factor in *Albright*. *Albright v. Albright*, 437 So.2d 1003, 1005 (Miss. 1983). The chancellor found that Dusty, at age seven, could be cared for equally by persons other than her mother. Additionally, the chancellor found that since Steve had remarried, his current wife and her nine year old daughter were available to care for Dusty. It appears that the chancellor dismissed Margaret's contention regarding the close nexus between a mother and her daughter, stating that it might have had some validity had Steve not remarried. Following the chancellor's logic on this point, it seems that a male can defeat the "tender years" presumption by merely remarrying. This is a proposition that I do not endorse. While there are fathers who are as good as, or better than, mothers with young daughters, that would be the exception, and such was not shown to exist in this case. I submit that, under the facts of the instant case, the chancellor failed to fully consider the tender years doctrine as required under the first factor of the *Albright* test.

¶35. The polestar consideration in custody matters is the best interest and welfare of the child, and all of the *Albright* factors are to be employed in the furtherance of that determination. *Albright*, 437 So.2d at 1005. In the case *sub judice*, the chancellor failed to properly consider all of the *Albright* factors. This was a close case, but the tie should not be broken by monetary considerations when there is no proof that the child has suffered or would suffer from a lack of resources. Further, since the chancellor summarily adopted the findings of fact and conclusions of law propounded by Steve, this Court should employ a heightened sense of scrutiny, which reveals that the chancellor abused his discretion in awarding custody of Dusty to Steve.

¶36. I respectfully dissent.

**BANKS AND SMITH, JJ., JOIN THIS OPINION.**