IRVING, J.,
for the Court:
¶ 1. On June 20, 1996, Martha Ann Stafford Cavett (Moore), hereinafter referred to as “Martha,” filed a motion for contempt and for modification against James Richard Cavett, III, hereinafter referred to as “Rick.” Martha’s motion asked that a change be made in the issues of child custody, visitation, telephone contact and interference with Martha’s relationship with the minor child. Rick filed an answer denying that he was in contempt of court and asked the court to award the custody of the child to him. The original judgment of divorce provided for joint legal and physical custody. The cause was tried over a two-day period, August 8, 1996 and January 9,1997. The chancellor issued his order on February 26, 1997 finding: 1) that Rick was not in contempt; 2) that an award of physical custody to the mother, with visitation every other weekend to his father, would best serve the child’s interest; and 3) that visitation during holidays and summer vacation was to remain as previously agreed upon in the original judgment of divorce.
¶ 2. On March 1, 1997, Rick filed a motion to alter the order of modification. The motion was heard by the court and denied by judgment dated May 15, 1997. Rick subsequently perfected his appeal in order to present these issues to this Court.
FACTS
¶ 3. The parties herein, Martha and Rick, were married December 29, 1982, and divorced September 12, 1990. Their marriage produced one child, Thomas Clinton Cavett (“Thomas”), who was born August 26, 1987, and whose custody and visitation are the subject of the case before this Court. Thomas attends a private school, St. Andrews Episcopal School, in Jackson, Mississippi. Rick is a medical doctor practicing in the field of pathology at the Mississippi Baptist Medical Center in Jackson, Mississippi. He has remarried and resides with his present wife, Melissa, in Hinds County, Mississippi. Martha has, likewise, remarried and is a housewife who resides with her present husband in Brandon, Rankin County, Mississippi.
¶ 4. At the hearing in the court below the chancellor conducted an in camera discussion with the child. When asked by the chancellor if he knew why they were *374 there, Thomas said, “Yes, sir, its because my mother and father are always fussing and fighting.” It appeared to the chancellor that Thomas, the nine year old son of the parties, was directly on point in response to the question.
¶ 5. The chancellor learned from the child that he was confused as to where he was supposed to be from time to time. The chancellor also determined that the child loves both his parents and is a fine youngster. It was also apparent to the chancellor that Thomas was in desperate need of stability and would continue to be caught in the middle of the battlefield between his mom and dad until they started treating him as a child and not as a possession.
¶ 6. The chancellor found that the mother and father, along with the stepmother and stepfather, are all fine people, well respected in their communities. The father earns well above average income. The stepmother is a well-respected schoolteacher and a caring person. The mother is a caring person, a good mother who has had the primary continuity of physical care of the child. The stepfather is employed as an automotive paint and body technician and appears to be stable and well respected in his field who loves the child and realizes his position is that of a stepfather.
¶ 7. The original visitation order that was included in the judgment of divorce provides, in part, as follows:
During the nine (9) months of the standard school year (September through May), Wife shall have custody of Thomas for nine out of every fourteen days, and Husband will have custody for the remaining five days. Husband’s custody periods will begin at about 5:30 p.m. on Tuesday and last until about 5:30 p.m. on Wednesday, every week. Every other week, in addition to the above, husband will have custody from about 5:30 p.m. on Thursday until about 5:30 p.m. on Friday, when Husband does not have weekend custody and on alternate weeks Husband will have custody from about 5:30 p.m. on Friday until about 5:30 p.m. on Sunday.
¶ 8. The testimony of both parties was that from the beginning the custodial periods in the agreement were unmanageable, and the parties agreed to not follow its provisions as to custodial periods, effectively agreeing to a self-help modification. At Rick’s suggestion the parties agreed that Martha would have physical custody from Tuesday through Saturday, with Rick taking custody of Thomas from Saturday until he was dropped off at school on Tuesday morning. Thereby, Martha had physical custody of the child for five days out of every seven-day period. Subsequently, Martha instituted a set time for the pickup on Saturday. This arrangement was followed, for the most part, until the events that led to the filing of this action for contempt and modification.
¶ 9. Martha’s charge of contempt against Rick is alleged to have occurred when Rick picked Thomas up on May 24, 1996, and failed to return him to his mother on May 26, 1996, as required in the adjusted visitation schedule. Rick charges that when he picked Thomas up after the child’s return from summer camp on June 15, 1996, and telephoned Martha’s home so that he could take the child home, he learned that Martha was out of town. Rick contends that Martha failed to notify him that she would not be home to receive the child. It was the next day before Martha returned home.
¶ 10. The trial court found that the testimony of all parties indicates that the parents are picking apart such small issues as taking clothes to and from visitation periods, allowing phone calls to the other parent, notifying the other parent of activities such as athletic events and piano lessons.
¶ 11. The chancellor found that Rick was not in contempt of court regarding the matter of returning Thomas to Martha in the May 26, 1996 complained of incident. The chancellor was also of the opinion that the visitation issue and joint physical cus *375 tody as it related to Thomas was required to be modified in order to serve the best interest of the child. As a consequence, the chancellor ruled as follows:
The legal care, custody and control of Thomas shall remain Joint. The physical care, custody and control of Thomas shall be changed with respect to Thomas in the following manner:
During the nine months of the standard school year (September through May), Rick shall have his son with him every other weekend, from the time school is out on Friday afternoon until the following Sunday night at 9:00 o’clock p.m., commencing on the first weekend of February 1997 (Friday, February 7, 1997).
The remaining summer and holiday visitation periods shall continue to be those set out in the prior agreement of the parties.
In addition to the visitation privilege specifically set forth, the parties may observe visitation any other times as they may agree to observe.
Both parties shall promptly advise each other of Thomas’s school grades and his participation in all events and activities. The Court finds that even phone calls are a problem between the mother and father with reference to the child and need to be spelled out.
Emergency calls may always be made with regard to the child’s health.
The mother shall not call Thomas while he visits with his father on the weekends. However, during the three two-week summer visitation periods (when Thomas is with his father), the mother shall have the right to call her son on Wednesday evenings between the hours of 6:00 p.m. to 7:00 p.m. and on Sunday afternoons between the hours of 3:00 p.m. and 4:00 p.m., which calls shall not exceed 15 minutes each.
The father is authorized to call his son at Martha’s home on Wednesday evenings between the hours of 6:00 p.m. and 7:00 p.m. and on Sunday afternoons between the hours of 5:00 p.m. and 6:00 p.m. on such Wednesdays and Sundays that he does not have Thomas with him. Vacation Notice: Each parent shall advise the other of those periods during the summer when they plan to be out of the State with Thomas. This includes notice as to where the child will be and an estimated time of his return. No phone call shall be made between the non-custodial parent and Thomas during these out-of-State vacation times.
In making the decision regarding the changes pertaining to visitation, the Court reviewed the Albright v. Albright, factors (437 So.2d 1003) and applied them to the case now before the Court in the following manner. (It was also both parties’ request for a change regarding the arrangement of child custody and visitation.):
(1) Polestar consideration is the best interest of the child. In the Smith v. Todd case (464 So.2d 1155), the Court said in part, “It is important that children have as much stability as possible when their parents are divorced. Once the Court has determined which parent should have custody of the children, then they should be allowed the stabilizing influence of knowing where home is.” It was apparent to the Court from the testimony and from the in camera discussion with Thomas, the nine-year-old child, that Thomas was confused from time to time as to where he was supposed to be. Thomas also said he had rather the Court make the determination as to custody and visitation. The Court must view the best interest of the child looking at the totality of the circumstances involved.
(2) and (3) The age, health and sex of the child has equal application for both of the parents, and in and of itself would not be determinative of the issue now before the Court.
(4) The continuity of the care would appear to favor the mother.
*376 (5) The parenting skills of both parents are good and one would not outweigh the other.
(6) In evaluating the employment of the parties, the Court found the mother to be a housewife with no outside employment. The father has, basically, 8:00 a.m. to 5:00 p.m., five days per week, employment. The mother could devote whatever time is necessary to the child without any problem.
(7) The physical and mental health of the parents is equal, with both parents free of any physical or mental health problem.
(8) The child seems to be emotionally tied to both parents. Thomas is emotionally concerned about his time to be with each parent and where he is to be at a given time. The child is also torn between his father’s desire for Thomas to play soccer and other sporting events (which sometimes appears to be to the extreme from the child’s point of view) as well as take piano lessons, and the mother’s concern about too much time involved for the child.
(9) Both parents are morally fit and unfitness of either was not pled or discussed.
(10) The home, school and community record of the child is not a significant factor except that the child, under the Court’s visitation program as now set, will allow the child to become more involved in community matters.
(11) The child’s age is not such that it will authorize him to express a preference by law.
(12) The factor of stability of home environment and employment of both parents and other factors relevant to the parent/child relationship are an important consideration in this case. The Court sincerely believes the best interest of the child will be served by the continuity of his presence in the home of the mother during the school week days so that his mind, body and emotions are free to spend quality time with his father on visitation periods.
ISSUES
¶ 12. The issues in this case, taken verbatim from Rick’s brief, are as follows:
I. THE TRIAL COURT ERRED IN FINDING THAT THE BEST INTEREST OF THE MINOR CHILD, THOMAS CLINTON CAVETT, WOULD BE SERVED BY AWARDING HIS PARAMOUNT PHYSICAL CUSTODY TO HIS MOTHER.
THE TRIAL COURT ERRED AS A MATTER OF LAW IN AWARDING CUSTODY OF THE MINOR CHILD TO HIS MOTHER BASED UPON APPLICATION OF THE AL-BRIGHT FACTORS.
THE JUDGMENT OF THE COURT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
STANDARD OF REVIEW
¶ 13. The standard of review in a child custody case is quite limited in that the chancellor must be manifestly wrong, clearly erroneous, or apply an erroneous legal standard in order for this court to reverse. Williams v. Williams, 656 So.2d 325, 330 (Miss.1995). Finding no error we affirm the chancellor’s judgment.
DISCUSSION OF THE LAW
I. DID THE TRIAL COURT ERR IN FINDING THAT THE BEST INTEREST OF THE MINOR CHILD, THOMAS CLINTON CA-VETT, WOULD BE SERVED BY AWARDING HIS PARAMOUNT PHYSICAL CUSTODY TO HIS MOTHER?
¶ 14. Rick concedes that Albright v. Albright, 437 So.2d 1003 (Miss.1983) and the dozen or so factors established by the holding therein is the leading authority in determining child custody. Those factors are:
*377 1) age of the child;
2) health and sex of the child;
3) determination of the parent that had the continuity of care prior to the separation;
4) which has the best parenting skills and which has the willingness and capacity to provide primary child care;
5) the employment of the parent and responsibilities of that employment;
6) physical and mental health and age of the parents;
7) emotional ties of parent and child;
8) moral fitness of parents;
9) the home, school and community record of the child;
10) the preference of the child at the age sufficient to express a preference by law;
11) stability of home environment and employment of each parent; and
12) other factors relevant to the parent-child relationship.
Id. at 1005.
¶ 15. Rick contends that while the lower court, in its opinion, did discuss the Al-bright factors in reaching its decision, several errors were made in applying the facts of this particular case to those factors.
¶ 16. Rick argues that the age of the child, when considered together with his sex, weighs in favor of Rick. Thomas was three years of age at the time his parents divorced. By the time this case was tried and the opinion rendered, he had reached age nine, and he is now eleven. Rick cites the case of Hassett v. Hassett, 690 So.2d 1140 (Miss.1997) in support of his contention that Thomas’s age and sex, and his involvement with outdoor activities, provide a strong preference toward custody with him.
¶ 17. Hassett held that custody to a father was strongly indicated in the case of a six year old male, since, according to the testimony of Dr. Wood Hiatt, a respected psychiatrist, that child was entering an age when male guidance was needed. Id. at 1149.
¶ 18. The obvious distinction between Hassett and the case at bar is the psychiatric testimony regarding custody that was presented in Hassett. No such testimony was either presented or indicated in the case at bar. Additionally, the child in Hassett was without male guidance while in the custody of his mother. In the case at bar, the testimony was that there is adequate male guidance by the stepfather in the mother’s home. Further, Rick himself has commendably provided substantial male guidance in the previous custodial arrangement, and there is no reason to believe that he will not continue to do so under the new custodial arrangement.
¶ 19. Rick next contends that the trial court clearly erred in finding that Martha had enjoyed the continuity of Thomas’s care. Rick argues that the parties were vested with joint physical custody of Thomas, and Rick had him for periods of time substantially equal to that of Martha. The chancellor determined from his in camera interview with Thomas that Thomas was confused from time to time as to where he was supposed to be. It was the chancellor’s considered opinion that Thomas needed the stabilizing influence of knowing where home is. His finding that Martha enjoyed the continuity of care was within his sound discretion. We find no error in this regard.
¶ 20. Rick claims that a serious error in finding of fact was made with regard to the relative parenting skills of the parents. He charges that Martha’s past history regarding parenting is checkered, at best. In support of this claim he cites instances of past problems and circumstances with regard to two older children of Martha who were adopted by Rick during their marriage. While it is true that there was troubling testimony regarding some of the things that happened in the lives of those two young- people, none of those things *378 could be directly attributable to Martha’s parenting skills. This Court would also remind Rick that he is the father of those two young people and shared in their upbringing during the all-important formative years. If blame for their problems is to be assigned to Martha’s poor parenting skills, the same must be said for Rick. The chancellor heard the testimony, examined the evidence and ruled that Martha’s parenting skills were sufficient. We find no error.
¶ 21. With regard to the “employment of the parties” Albright factor, Rick claims that while the chancellor’s notation in his opinion — that the mother could devote whatever time is necessary to the child without any problem — may be true, Martha has failed or refused to do so. The evidence he offers in support of this contention is that she failed to get Thomas to all of his soccer practices and games. The fact that the child was not in attendance at every soccer practice or at every game is hardly reason to find that Martha failed or refused to devote the necessary time to the child. This Court can find no fault with the chancellor’s reasoning on this issue.
¶ 22. Rick argues that the factor regarding the home, school, and community record of the child, was an area of significant error by the lower court. Rick claims that while the chancellor found that this was not a significant factor, the child was significantly involved in these areas, due to Rick’s guidance. Rick claims that he and his wife, Melissa, saw that Thomas was heavily involved at St. Andrews church. They saw to it that Thomas was exposed to charity projects and cultural activities.
¶ 23.-Clearly, argues Rick, Thomas is and will be more culturally diverse due to Rick’s and not Martha’s influence. Yet, amazingly, claims Rick, the chancellor found that the new visitation program whereby Rick would be allowed to see Thomas every other weekend during the school year, would allow Thomas to become more involved in community affairs. There can be no question, according to Rick, that this is a major mistake and that this factor should have weighed heavily in his favor.
¶ 24. This Court finds that the chancellor’s ruling does not discount Rick and Melissa’s efforts and accomplishments in this area, nor does it weigh against Rick, as Rick appears to argue. The chancellor merely found that the new visitation program would allow more time for Thomas to participate in these activities. We can find no reason to reverse the chancellor’s decision on this issue.
¶ 25. Lastly, Rick argues that the stability of home environment weighs in favor of Rick. He cites Torrence v. Moore, 455 So.2d 778 (Miss.1984) as the closest parallel between reported case law and the case at bar. In that case, both parents sought modification of a joint custody judgment as their seven year old son approached school age. Rick argues that the chancellor awarded custody in Torrence to the father on the basis of certain factors which are also present in the case at bar. Said factors included such things as the father’s taking the child on numerous hunting and fishing trips, securing swimming lessons, seeing to the religious and spiritual training of the child, teaching the child the value of money through the granting of an allowance, and inclusion of the child in a wide range of family activities. Rick contends that the presence of these same and similar factors in this case requires that he be granted custody of Thomas. Rick also contends that the chancellor’s findings were manifestly wrong and against the overwhelming weight of the evidence.
¶ 26. Rick’s claim regarding the basis for the award of custody to the father in Tor-rence is incorrect. At trial, both sides in Torrence conceded the fitness of the other. The issue was squarely presented to the chancellor of what was in the best interest of the child. Id. at 778. The chancellor found that the advent of school age was a material change in circumstances that rendered the split custody of the child useless *379 and even harmful to the child. The chancellor further found that, considering all of the evidence presented to him, the proof was overwhelming that the best interest of the child would be served by modifying the prior judgment of joint custody and placing the child in the custody of his father. This he did, even though finding that either parent would be fit and suitable to have the care, custody and control of the child. Id. at 780.
¶ 27. This Court finds that the chancellor’s decision in the case at bar was not manifestly wrong and certainly not against the overwhelming weight of the evidence, nor did he not properly apply the law to the facts as he found them. Therefore, we affirm the decision of the lower court.
¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED AND ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., COLEMAN, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
BRIDGES, J„ NOT PARTICIPATING.