MAXWELL, J.,
 

 for the Court.
 

 ¶ 1. Following a trial on the sole issue of custody of minor children, Chase, Coleden, and Amber, the Chancery Court of Ponto-toc County awarded joint legal custody of the children to Kelly McCoy Montgomery, Jr. (M.J.), and Lisa Marie Montgomery (Lisa). M.J. received primary physical custody, and Lisa received extensive and liberal visitation rights. Aggrieved by the chancellor’s decision, Lisa appeals and raises the following assignments of error: (1) the chancellor faked to properly consider the separation of the parties’ children; (2) the chancellor overemphasized Lisa’s adulterous affair as part of the
 
 Albright
 
 analysis; (3) the chancellor abused her discretion by concluding that the age, health, and sex of the children; capacities to provide primary child care and employment responsibilities; and the emotional ties of the parents and children factors favored neither party; and (4) the chancellor abused her discretion by concluding that the continuity of care of the children,
 
 *41
 
 and the stability of home environment and employment factors favored the father.
 
 [1]
 

 ¶ 2. After hearing oral argument and reviewing the record and briefs in their entirety, we find no error and affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 3. M.J. and Lisa were married on June 10, 2000. Before separating, M.J. and Lisa resided in Pontotoc, Mississippi in a four-bedroom, two-bathroom manufactured home on property adjacent to M.J.’s parents and other extended family members. M.J. and Lisa had three children during their marriage. Chase was born on December 6, 2000; Coleden was born on December 11, 2002; and Amber was born on April 9, 2004. Lisa also had one son, Christian, from a previous relationship.
 

 ¶ 4. During their marriage and prior to their separation, both M.J. and Lisa had full-time jobs. Since 2000, Lisa has worked for four different employers. She was also a stay-at-home mother for two years. At the time of the trial, M.J. was employed with Super Sagless, a manufacturing facility in Tupelo, Mississippi, where he had worked for the previous four years.
 

 ¶ 5. M.J. and Lisa separated on May 15, 2006, when Lisa began having an affair with a man she met at work. M.J. testified that at the beginning of Lisa’s affair, she was spending so much time on the telephone and away from the family that he became the children’s primary caregiver. In fact, during her affair, Lisa moved out of the family home, leaving M.J. to care for their three children and for Lisa’s child from a previous relationship.
 

 ¶ 6. On September 5, 2006, the chancellor entered an agreed temporary order, which gave M.J. temporary physical custody of the children. During this time, M.J. was the sole primary caregiver for the children. Since he worked the shift from approximately 2:00 p.m. until 11:30 p.m., Monday through Friday, M.J.’s mother cared for the children when he was gone. She helped the children with their homework, fed them, bathed them, and put them to bed. While M.J. was often gone from the time the children got home from school until after their bedtime, he did spend time helping Chase get ready for school. M.J. also spent the days with Co-leden and Amber, except for the two days Coleden attended preschool. When the children were with M.J., they participated in social activities, such as Cub Scouts and church activities.
 

 ¶ 7. After the agreed temporary custody order was in place, Lisa continued to maintain a relationship with the children. However, she admitted violating several provisions of the order, including smoking and using foul or vulgar language in front of the children. In addition, after the separation, Lisa failed to provide the children with any financial support as required by the agreed court order.
 

 ¶ 8. During the fifteen months M.J. had temporary physical custody of the children, Lisa moved three times. At the time of the trial, Lisa lived in a two-bedroom, two-bathroom manufactured home, which was adjacent to her parents’ and sister’s homes in Thaxton, Mississippi. Because Lisa worked from 7:00 a.m. until 3:30 p.m., Monday through Friday, Lisa’s sister watched her son, Christian, before school.
 

 STANDARD OF REVIEW
 

 ¶ 9. In child custody cases, “we are bound by the limits of our standard of
 
 *42
 
 review and may reverse only when the decision of the trial court was manifestly wrong or clearly erroneous, or an erroneous legal standard was employed.”
 
 Hensarling v. Hensarling,
 
 824 So.2d 583, 587(8) (Miss.2002) (citations omitted). “Our standard of review in child custody cases is very narrow. Like the chancellor, our polestar consideration must be the best interest of the child. However, it is not our role to substitute our judgment for [the chancellor’s].”
 
 Id.
 
 We review questions of law de novo.
 
 Broome v. Broome,
 
 832 So.2d 1247, 1251(¶7) (Miss.Ct.App.2002).
 

 ANALYSIS OF THE ISSUES
 

 ¶ 10. In
 
 Albright v. Albright,
 
 437 So.2d 1003, 1005 (Miss.1983), the supreme court set out the following twelve factors chancellors must consider in determining which parent should be awarded custody: (1) the age, health, and sex of the child; (2) the continuity of care prior to the separation; (3) the parenting skills; (4) the willingness and capacity to provide primary child care; (5) the employment and employment responsibilities of the parents; (6) the physical and mental health and ages of the parents; (7) the emotional ties of the parents and child; (8) the moral fitness of the parents; (9) the home, school, and community record of the child; (10) the preference of the child at the age when the child may express a preference by law; (11) the stability of the home environment of each parent; and (12) other relevant factors to the parent-child relationship not stated in
 
 Albright.
 
 In addressing these factors, chancellors are instructed to weigh the credibility of witnesses as well as interpret the evidence where the evidence is capable of more than one reasonable interpretation to arrive at a custody decision.
 
 Johnson v. Gray,
 
 859 So.2d 1006, 1013-14(36) (Miss.2003).
 

 ¶ 11. In the present case, the chancellor conducted an
 
 Albright
 
 analysis and found that five factors weighed in favor of M.J. and none weighed in favor of Lisa. Accordingly, M.J. was awarded primary physical custody of Chase, Coleden, and Amber. Lisa retained custody of her child, Christian, from a previous relationship and was awarded visitation with Chase, Coleden, and Amber.
 

 I. The Chancellor’s Application of Other Relevant Factors in the
 
 Al-bright
 
 Analysis
 

 ¶ 12. Before we address the chancellor’s decision, we remind the parties that “[determining custody of children is one of the most difficult decisions that courts must make.”
 
 Brewer v. Brewer,
 
 919 So.2d 135, 141(21) (Miss.Ct.App.2005). In
 
 Buchanan v. Buchanan,
 
 587 So.2d 892, 897 (Miss.1991), the supreme court held:
 

 The law affords no mathematical formula for deciding such cases, and, even when the trial judge sensitively assesses the factors noted in
 
 [Albright
 
 ] and [its] progeny, the best the judiciary can offer is a good guess. We doubt it would be contrary to these children’s best interests if [their parents] were to sit down and talk as the intelligent and mature adults they profess to be and resolve these matters without further civil warfare.
 

 On the other hand, for one reason or another, we know and accept that there are times when people cannot agree, and the reason we have courts is to decide these cases.
 

 Here, the chancellor was faced with a close case.
 

 ¶ 13. In her first assignment of error, Lisa takes issue with the chancellor’s evaluation of the separation of siblings under the “other factors” prong of
 
 Albright.
 
 She claims the chancellor failed to properly consider the separation of her and M.J.’s
 
 *43
 
 natural children from her other child and did not take into account the siblings’ strong bond and the alleged adverse impact the separation had on the children.
 

 ¶ 14. The record reflects, however, that the chancellor did consider the separation of the children, but ultimately found it did not outweigh the other factors that favored M.J. The chancellor specifically noted: “the [c]ourt has also taken into account ... a child of Lisa’s from a prior relationship, Christian ... and that the children in this case have had a relationship with their half-sibling.”
 

 ¶ 15. In addressing the issue of separating children, the chancellor cited the supreme court’s decision in
 
 Copeland,
 
 which instructs that “[tjhere is no ‘hard and fast’ rule that the best interests] of siblings will be served by keeping them together.”
 
 Copeland v. Copeland,
 
 904 So.2d 1066, 1076-77 (43-44) (Miss.2004) (citing
 
 Sellers v. Sellers,
 
 638 So.2d 481, 484 (Miss.1994)). In
 
 Copeland,
 
 the supreme court affirmed a chancellor’s decision to award custody to a father, even though it required separation of a child from his half-sibling.
 
 Id.
 

 ¶ 16. Here, the record reflects that the chancellor specifically considered the potential effect that the separation of Lisa’s child from a prior relationship from the other children might have on the children, but she determined it did not outweigh the other factors favoring M.J. In accordance with our narrow scope of review, we do not find the chancellor abused her discretion in making this difficult decision.
 

 II. The Chancellor’s Analysis of Lisa’s Adulterous Affair
 

 ¶ 17. Next, Lisa claims that the chancellor overemphasized her adulterous affair in the
 
 Albright
 
 analysis by considering it under both the moral-fitness factor and the parenting-skills factor. She contends this alleged double counting resulted in her being unfairly sanctioned for her affair. She also asserts that the chancellor failed to consider M.J.’s use of pornography when weighing the moral-fitness factor.
 

 ¶ 18. “While it is not the purpose of [appellate courts] to punish adultery, it is a factor to consider in awarding custody of minor children.” Mabus
 
 v. Mabus,
 
 890 So.2d 806, 817-18(46) (Miss.2003). In
 
 Mabus,
 
 the chancellor concluded that an affair “interfered with [the wife’s] ability to effectively parent, regardless of whether the children knew of it.”
 
 Id.
 
 Also, according to
 
 Copeland\
 
 an affair can be weighed against a parent under the parental-skills factor when the affair causes the parent to spend time away from the family.
 
 Copeland,
 
 904 So.2d at 1076(40).
 

 ¶ 19. M.J. testified that at the beginning of Lisa’s affair, she was spending so much time on the telephone and away from the family that he was forced to be the primary caregiver. Furthermore, it is undisputed that Lisa ultimately moved out of the family home due to the affair and left M.J. with all four children. Based upon our review, we do not find that the chancellor was double counting or separately punishing Lisa for her affair. Rather, it appears the chancellor was considering the fact that Lisa was less involved in her parental duties during the time of her adulterous affair. Thus, we find Lisa’s double-counting argument is without merit.
 

 ¶ 20. Lisa also contends the chancellor’s failure to consider M.J.’s use of pornography under the moral-fitness factor amounted to an abuse of discretion. While M.J. did testify that he viewed pornography in the home away from the children, Lisa also admitted that she viewed pornography with him behind closed doors. Had the pornography been viewed in the presence
 
 *44
 
 of the children or solely by M.J., we might have reached a different conclusion on this issue. However, since both parties admittedly participated in viewing pornography away from the children, we cannot find that the chancellor manifestly erred by failing to hold the pornography issue solely against M. J.
 

 III. The Chancellor’s Application of the Following Factors: Age, Health, and Sex of the Child; the Parents’ Capacities to Provide Primary Child Care; Employment Responsibilities; and the Emotional Ties of the Parent and Child
 

 ¶21. Lisa next claims the chancellor erred by not providing her the tender-years advantage. Lisa also contends she should have been given more consideration because of her more conventional work schedule.
 

 A. Age, Health, and Sex of Child
 

 ¶ 22. According to the tender-years doctrine, if a “child is of such tender age as to require the mother’s care for [his or her] physical welfare, [he or she] should be awarded to [the mother’s] custody....”
 
 Gilliland v. Gilliland,
 
 969 So.2d 56, 66(¶ 32) (Miss.Ct.App.2007) (citing
 
 Law v. Page,
 
 618 So.2d 96, 101 (Miss.1993)). However, the supreme court has made clear that the tender-years doctrine has been diminished somewhat in recent years and is no longer absolute.
 
 Copeland,
 
 904 So.2d at 1075 (34-35) (citing
 
 Law,
 
 618 So.2d at 101). The doctrine has become even less binding when the child is male.
 
 Id.
 

 ¶ 23. The supreme court has further explained that “a child is no longer of tender-years when that child can be equally cared for by persons other than the mother.”
 
 Mercier v. Mercier,
 
 717 So.2d 304, 307(15) (Miss.1998) (citing
 
 Torrence v. Moore,
 
 455 So.2d 778, 780 (Miss.1984)). In
 
 Mercier,
 
 the supreme court found a seven-year-old to be “long past the age that requires this type of special care.”
 
 Id.
 

 ¶ 24. In the present matter, the chancellor cited this Court’s decision in
 
 Brewer,
 
 919 So.2d at 140(18), in addressing the age and sex of Coleden and Amber. In
 
 Brewer,
 
 we acknowledged the tender-years doctrine, but still affirmed the chancellor’s award of primary physical custody of a four-year-old child to the father, despite the age of the child.
 
 Id.
 

 ¶ 25. The children at issue here include a seven-year-old boy, a five-year-old boy, and a three-year-old girl.
 
 [2]
 
 Two of the children, the five-year-old son, Coleden, and the three-year-old daughter, Amber, fall within the tender-years doctrine. Of these two children, the chancellor found that custody of the female child favored Lisa on this factor. Therefore, only the custody of the five-year-old son, Coleden, is subject to Lisa’s tender-years argument.
 

 ¶ 26. The chancellor’s analysis of this factor is quite brief. Nevertheless, in considering the age and sex of the five-year-old boy, Coleden, she did specifically acknowledge the tender-years doctrine and cited case law addressing its diminished application. In
 
 Brewer,
 
 this Court found that custody of a four-year-old could be given to a father and acknowledged that age is just one factor to consider under
 
 Albright. Brewer,
 
 919 So.2d at 140 n. 1 (citing
 
 Albright,
 
 437 So.2d at 1005). As an appellate court, we are reminded that the chancellor’s findings of fact are entitled to deference.
 
 Rainey v. Rainey,
 
 205 So.2d
 
 *45
 
 514, 515 (Miss.1967). Accordingly, based on our previous decision in
 
 Brewer
 
 and this Court’s deferential standard, we are unable to find that the chancellor committed manifest error in favoring M.J. on this factor.
 

 B. Parents’ Capacities to Provide Primary Child Care and Employment Responsibilities
 

 ¶ 27. Lisa also claims the chancellor erred by favoring neither side as to his or her capacity to provide primary child care. Lisa alleges the chancellor did not give proper weight to her more conventional work schedule, which allows her to spend the afternoon and night hours with the children, as well as Saturdays.
 

 ¶ 28. In determining whether the chancellor’s findings were supported by credible evidence, we note the chancellor found that both parties worked full-time jobs and required assistance when they cared for the children. Thus, neither party was determined to be in a better position than the other. Also, when weighing the employment and employment responsibilities of the parents, the chancellor found that Lisa’s four different jobs since 2000 balanced out against M.J.’s evening woi'k schedule. Accordingly, the chancellor’s findings were supported by the record, and we find no error here.
 

 C. Emotional Ties of the Parent and Child
 

 ¶ 29. Lisa next contends the chancellor erred in finding the emotional ties of the parent and children factor was neutral. However, Lisa failed to include any legal authority in her brief to support this statement, nor does she specifically address it. Therefore, we are precluded from consideration of this issue on appeal.
 
 Griffith v. Griffith,
 
 997 So.2d 218, 224-25(¶26) (Miss.Ct.App.2008).
 

 IV. The Chancellor’s Application of the Following Factors: Continuity of Care of the Children and Stability of Home Environment and Employment
 

 A. Continuity of Care
 

 ¶ 30. Lisa argues that the chancellor was incorrect in finding that the continuity-of-eare factor favored M.J. because she was the primary caretaker before the separation, and M.J.’s mother was the primary caretaker thereafter.
 

 ¶ 31. In analyzing this factor, the chancellor noted that the court may take into account the continuity of care provided both before and after the separation of the parties.
 
 Copeland,
 
 904 So.2d at 1076(39). The supreme court instructs that the time before the separation as well as the time between the separation and the trial should both be given equal consideration in determining the continuity of care.
 
 Id.
 
 (citing
 
 Jerome v. Stroud,
 
 689 So.2d 755, 757 (Miss.1997)).
 

 ¶ 32. The chancellor found that both parties were involved in the care of the children. However, she noted that after the separation, M.J. served as primary caretaker for all of the children as provided by the agreed temporary custody order. The chancellor also pointed out that Lisa failed to make any child support payments after the separation as she was required to do by court order. Finally, the chancellor acknowledged that M.J.’s mother takes care of the children, and she was doing so at M.J.’s direction while he was at work. These findings are supported by the record, and we find no error here.
 

 B. Stability of the Home Environment and Employment of Each Parent
 

 ¶ 33. Lisa finally argues that the chancellor erred by finding that the stability-of-
 
 *46
 
 the-home-environment and employment factor favored M.J. Lisa reasons that she too has family nearby, and that she also has a close relationship with her sister who she claims is able to assist her with the children. Additionally, Lisa contends that had custody been awarded to her, there would not be a third party, like M.J.’s mother, taking care of the children at night. She also emphasizes that she does not have to work on Saturdays.
 

 ¶ 34. When weighing the stability of the home environment, our courts have considered numerous factors which contribute to a favorable home environment. Parents with extended family nearby have been favored,
 
 Copeland,
 
 904 So.2d at 1076 (¶¶ 41-42), as has a father who took his child to church,
 
 Pacheco v. Pacheco,
 
 770 So.2d 1007, 1010-11(17) (Miss.Ct.App.2000). We have also found that the stability of the home environment may be negatively affected when a parent has moved multiple times in recent years.
 
 Jernigan v. Jernigan,
 
 830 So.2d 651, 652(3) (Miss.Ct.App.2002). The family’s living arrangements may also be considered. We have held that a mother was favored over a father when her son had his own room in her apartment, while the father was living with his parents.
 
 Bass v. Bass,
 
 879 So.2d 1122, 1126(15) (Miss.Ct.App.2004).
 

 ¶ 35. In the case before us, the chancellor was confronted with evidence that M.J. has maintained a stable routine and has ensured the children are cared for by his mother while he is at work. He also has other family living nearby his home who have helped care for the children. M.J. has taken it upon himself to make sure that his children attend church and other social activities, and he owns a home large enough for each child to have his or her own room.
 

 ¶ 36. While Lisa also lives close to relatives who can help care for the children, she has moved multiple times in the past few years, and she has admittedly failed to take the children to church when she has custody of them on the weekends. At the time of the trial, she already had one child living with her in a two-bedroom mobile home, while M.J. had a four-bedroom, two-bathroom mobile home. Finally, Chase, the oldest son, would have to change schools if the children lived with Lisa.
 

 ¶ 37. Again, even if we do not agree with the chancellor, our limited role is to determine if the chancellor’s decision on this
 
 Albright
 
 factor was supported by credible evidence. Here, we find that it was.
 

 ¶ 38. Accordingly, for the reasons cited herein, we affirm the chancellor’s judgment.
 

 ¶ 39. THE JUDGMENT OF THE CHANCERY COURT OF PONTOTOC COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. BARNES, J, CONCURS IN PART AND IN THE RESULT.
 

 [1]
 

 . The parties were also granted a divorce based upon irreconcilable differences, which they do not contest.
 

 [2]
 

 . These were the respective ages of the children at the time of the chancellor's custody determination.