MAXWELL, J.,
 

 for the Court:
 

 ¶ 1. As part of their 2004 irreconcilable-differences divorce, Lisa Kole and Jeremy McCarty agreed to joint physical custody of their two children. But constantly exchanging the children between them soon became unworkable, prompting each to file motions to modify custody. In 2009, the Jackson County Chancery Court modified the custody of Lisa and Jeremy’s two children, awarding Jeremy sole physical custody and Lisa visitation.
 

 ¶ 2. On appeal, Lisa challenges the evi-dentiary basis for the chancellor’s modification. She argues the chancellor placed too much emphasis on unreliable evidence supporting Jeremy’s custody award and too little weight on evidence showing Jeremy was a bad parent. Since these questions concern the weight of the evidence, we defer to the chancellor. Because his decision is supported by substantial evidence, we find no manifest error and affirm the custody modification.
 

 BACKGROUND
 

 ¶ 3. Lisa and Jeremy’s two children, Jul-ianna and Jacob, were ages four and one at the time of the 2004 irreconcilable-differences divorce. The parents agreed to joint physical custody.
 

 ¶ 4. Both parents remarried. Lisa married Ron Kole in January 2005, after becoming pregnant with his child before her divorce from Jeremy was finalized. And Jeremy married Karen in 2007, with whom he had been sexually involved prior to his divorce from Lisa. As expected, the record strongly supports that neither parent got along with the other’s new spouse. Jeremy and Ron were involved in at least one fistfight while exchanging the children. And Lisa and Karen both exhibited extreme animosity toward one another. Lisa admitted she had drawn a picture of Karen in Julianna’s journal, as if Julianna had drawn it. She captioned the picture, “spit on Karen every day.” And Karen, in turn, wrote a nineteen-page, single-spaced typed letter to Lisa, which Lisa found threatening and insulting.
 

 ¶ 5. In 2005, Lisa sought to modify the joint-custody agreement and requested sole physical custody of both children. Jeremy responded with his own request for sole custody. For two years, neither
 
 *1224
 
 parent pushed for a modification determination. But in 2007, they jointly requested the chancellor appoint a guardian ad litem (GAL).
 

 ¶ 6. The GAL filed a preliminary report in August 2007, expressing deep concern for Julianna, then seven years old, and her emotional stability. As a result of her preliminary investigations, the GAL concluded Lisa was mentally unhealthy and was using Julianna as a pawn in Lisa’s embattled relationship with Jeremy. The GAL recommended the chancellor immediately award Jeremy temporary custody of both children until she could present her final report to the chancellor for determination of whether permanent modification was in the children’s best interests. On August 30, 2007, the chancellor granted Jeremy temporary sole physical custody of Julianna and Jacob. He renewed this order twice over the next two years, while awaiting a final custody hearing.
 

 ¶ 7. In February 2009, the GAL entered her final report. Based on her interviews with both parents and both children, she perceived a material change in circumstances had occurred since the divorce. She considered the change detrimental to the children and reasoned a permanent modification of custody was in their best interests. The material change was Lisa’s manipulation of her children and interference with their relationship with their father. The GAL turned to the Albright
 
 [1]
 
 factors to determine which custody arrangement would serve the children’s best interests. After concluding that, of the ten relevant factors, four were neutral, one favored Lisa, and five favored Jeremy, she recommended the chancellor award Jeremy custody.
 

 ¶ 8. On February 3, 2009, the chancellor began the custody-modification hearing, which ultimately concluded on May 12, 2009. The chancellor heard testimony from both parents and the GAL. He admitted into evidence Lisa’s drawing, Karen’s nineteen-page letter, and the GAL’s reports. But he excluded records of Jeremy’s three DUI convictions. The chancellor reasoned that because the convictions had occurred before the divorce, they were not relevant to the issues of a material change of circumstances since the divorce or Jeremy’s present character and parenting abilities. Because Lisa was unable to produce any evidence post-divorce alcohol or drug abuse by Jeremy, the chancellor excluded the misdemeanor convictions.
 

 ¶ 9. At the conclusion of the hearing, the chancellor denied Lisa’s motion for custody and granted Jeremy’s. The chancellor found a material change in circumstances had occurred, supported by his specific findings that “Lisa’s behavior toward her daughter Julianna, her severe preoccupation with Jeremy[] and his life and her hatred for Karen constitute a material change in circumstances since the original custody decree that has adversely impacted the children....”
 

 ¶ 10. The chancellor applied the
 
 Al-bright
 
 factors and determined it was in the best interests of the children to award Jeremy custody. Of the ten relevant factors, the chancellor found four were neutral and the other six favored Jeremy. On June 2, 2009, the chancellor ordered custody be permanently modified from joint to sole custody to Jeremy. Lisa timely appealed.
 

 SCOPE OF OUR REVIEW
 

 ¶ 11. “The standard of review in child custody cases is limited.”
 
 Lorenz v. Strait,
 
 987 So.2d 427, 430 (¶ 12) (Miss.2008). “This Court will not reverse a chancellor’s decision when supported by
 
 *1225
 
 substantial evidence unless the chancellor either abused his discretion or based the decision on manifest factual or legal error.”
 
 Id.
 
 (citing
 
 Settle v. Galloway,
 
 682 So.2d 1032, 1033 (Miss.1996)).
 

 ¶ 12. The chancellor decided that: (1) since the 2004 divorce, a material change in circumstances had occurred; and (2) it was in the best interests of the children to modify custody and award Jeremy permanent physical custody. Our review of these conclusions is limited to asking did the chancellor properly apply the law and did he base his decisions on substantial evidence.
 

 DISCUSSION
 

 I. The Evidence
 

 ¶ 13. Underlying Lisa’s challenge to the chancellor’s modification are three evidentiary decisions she claims were legal error. We begin by emphasizing that credibility and weight-of-evidence issues are factual issues for the chancellor to decide.
 
 Lorenz,
 
 987 So.2d at 430 (¶ 12) (citing
 
 Chamblee v. Chamblee,
 
 637 So.2d 850, 860 (Miss.1994)). We further note that the “[ajdmission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion.”
 
 Blake v. Clein,
 
 903 So.2d 710, 722 (¶ 30) (Miss.2005) (quoting
 
 Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.,
 
 716 So.2d 200, 210 (¶ 36) (Miss.1998)). For the following reasons, we find no abuse of discretion in the chancellor’s treatment of the evidence.
 

 A. The GAL’s Recommendations
 

 ¶ 14. Lisa argues the chancellor put undue weight on the GAL’s unreliable reports and recommendations. According to Lisa, the GAL neglected her duties and produced an unreliable report. She specifically claims the GAL (1) refused to consider certain relevant evidence — Jeremy’s past DUIs and Karen’s nineteen-page letter, (2) relied too heavily on other evidence — the interviews with Julianna, who she argues was too young to be relied upon, and (3) exhibited an irrational bias against the Koles due to a “misunderstanding” that led to the GAL trying to get a restraining order against Lisa’s husband, Ron.
 

 ¶ 15. Lisa further argues the GAL’s failures in themselves warrant reversal. But unlike the authority she cites in support, this is not a case where Mississippi statutory law mandated a GAL be appointed.
 
 Cf.
 
 Miss.Code Ann. § 43-21-121 (Rev. 2009) (listing circumstances when GAL must be appointed);
 
 In re D.K.L.,
 
 652 So.2d 184 (Miss.1995) (court-ordered appointment of a GAL to represent neglected child). Rather, here the parties mutually requested the chancellor appoint a GAL. So the underlying performance of the GAL is not the controlling issue. Instead, we focus on the
 
 chancellor’s
 
 performance in his role as fact-finder and whether the evidence supports his conclusion.
 
 Lorenz,
 
 987 So.2d at 431 (¶ 16) (citing Yates
 
 v. Yates,
 
 284 So.2d 46, 47 (Miss.1973)).
 

 ¶ 16. The GAL’s reports and testimony was evidence. And as with all evidence presented, the chancellor, as the fact-finder, was tasked with deciding how much weight it deserved.
 
 Lorenz,
 
 987 So.2d at 431 (¶ 16) (citing
 
 S.N.C. v. J.R.D. Jr.,
 
 755 So.2d 1077, 1082 (¶ 17) (Miss.2000)). The GAL testified at the custody hearing about the evidentiary basis of her report. She explained why she had relied on Julianna’s interview and how she made herself available to Lisa, through Lisa’s attorney, even after the restraining-order incident with Ron. She also explained that she did not consider Jeremy’s DUIs because no one had told her about them. And, even if someone had, she reasoned the convictions would have been too remote to be relevant
 
 *1226
 
 to her analysis. She further explained she did not place a great deal of weight on Karen’s letter since she believed Karen was “venting” her frustration over Lisa’s jealousy. Satisfied that the GAL had performed her duties and provided a sound report, the chancellor gave her recommendations the appropriate weight he thought they deserved.
 

 ¶ 17. We also acknowledge that the chancellor did not merely adopt the GAL’s
 
 Albright
 
 findings. He instead conducted an independent analysis of these factors. Though he considered the report along with the other evidence, he differed with the GAL on certain points.
 
 [2]
 
 Therefore, we find no abuse of discretion in drawing from the GAL reports in reaching his conclusions.
 

 B. Karen’s Letter
 

 ¶ 18. Lisa offered Karen’s nineteen-page letter as evidence of Jeremy’s bad character and emotional instability. The chancellor considered the letter, reaching the same conclusion as the GAL — that Karen was merely venting frustration. The chancellor said he did not see how the letter showed
 
 Jeremy
 
 was emotionally manipulative, a conclusion the chancellor instead drew about Lisa when considering the emotional ties of the parent and child in his
 
 Albright
 
 analysis. In fact, he did not reason that the letter weighed against Jeremy at all.
 

 ¶ 19. Lisa takes serious issue with the chancellor’s assessment. She relies on a psychologist’s report describing the letter as threatening and the product of “grandiose” thinking. But we simply cannot reverse the chancellor’s decision because he drew what Lisa believes was the wrong conclusion.
 
 Rinehart v. Barnes,
 
 819 So.2d 564, 567 (¶ 10) (Miss.Ct.App.2002). The chancellor supported his decision with credible evidence — (1) the GAL’s opinion, formed after considering Karen’s letter in context of her investigation, and (2) his own determination the letter was not relevant to Jeremy’s emotional stability. Thus, we find no abuse of discretion in the chancellor assigning the letter little evi-dentiary value.
 

 C. Jeremy’s Pre-Divorce Behavior
 

 ¶ 20. Lisa takes issue with the chancellor’s refusal to admit evidence of Jeremy’s past drug and alcohol abuse, including three DUIs. She also complains the chancellor failed to consider Jeremy’s absence as a father to his three older sons from past relationships. Because this evidence referred to pre-divorce behavior, the chancellor concluded it was not relevant to the question of a material change after the divorce.
 

 ¶ 21. Although Lisa tried to admit the evidence of drugs and DUIs to show a pattern of conduct, she failed to produce any evidence of drug or alcohol abuse since the divorce to establish a present or more recent pattern. Because making eviden-tiary calls of this nature falls within the ambit of the chancellor’s discretion, we find no error in his conclusion that Jeremy’s pre-divorce behavior was not relevant to the subsequent modification request. M.R.E. 401; 402 (defining “relevant evidence” and proscribing irrelevant evidence as inadmissible). Further, the chancellor determined testimony about Jeremy’s relationship with his older children did not outweigh the evidence of Jeremy’s attentive relationship to Julianna and Jacob. This also falls within his province as the
 
 *1227
 
 fact-finder. We find no abuse of discretion in the chancellor’s handling of this evidence.
 

 II. The Child-Custody Modification
 

 ¶ 22. We next address the chancellor’s decision to modify custody. To modify a previous custody order, “the party seeking the change bears the initial burden of proving there has been a material change in circumstances ... adverse to the child’s welfare.”
 
 Anderson v. Anderson,
 
 961 So.2d 55, 58 (¶ 6) (Miss.Ct.App.2007) (citing
 
 Thompson v. Thompson,
 
 799 So.2d 919, 922 (¶ 8) (Miss.Ct.App.2001)). If the party meets this burden, “the chancellor may determine whether the best interest of the child requires a change in custody.”
 
 Id.
 

 ¶ 23. In determining whether an adverse material change has occurred, “the chancellor is required to consider the situation of the child in its totality and may not confine himself to consideration of isolated incidents or events.”
 
 Ferguson v. Ferguson,
 
 782 So.2d 181, 183 (¶ 5) (Miss.Ct.App.2001) (citing
 
 Morrow v. Morrow,
 
 591 So.2d 829, 833 (Miss.1991)). This court has noted, “[w]hen considering a modification of child custody, the proper approach [for chancellors] is to first identify the specific change in circumstances, and then analyze and apply the
 
 Albright
 
 factors in light of that change.”
 
 Sturgis v. Sturgis,
 
 792 So.2d 1020, 1025 (¶ 19) (Miss.Ct.App.2001). We find the chancellor properly followed this directive.
 

 A. A Material Change in Circumstances Adversely Affecting the Welfare of the Children
 

 ¶ 24. The chancellor first found that Jeremy had proved an adverse material change in circumstances had occurred. The chancellor supported his determination with specific findings regarding Lisa’s behavior and its adverse affect on the children. Instead of limiting his conclusion to an isolated incident, he considered the totality of the circumstances since the divorce.
 

 ¶ 25. Lisa argues the chancellor erred in finding a material change because he based his decision on the fact Lisa hated Karen. Because Lisa’s feelings about Karen were well-known prior to the divorce, she claims the chancellor relied on a circumstance that has not changed since the divorce and failed to support his conclusion that a post-divorce change had occurred. But the chancellor agreed with the GAL that Lisa had an unhealthy preoccupation with Jeremy’s remarriage — a circumstance that occurred
 
 after
 
 the divorce — and supported his conclusions with post-divorce incidents between Lisa and Karen. He also considered Lisa’s post-divorce behavior toward Julianna. Therefore, we find appropriate support for his conclusion that a material change had occurred that adversely affected the welfare of the children.
 

 B. The Best Interests of the Children
 

 ¶ 26. The chancellor next considered the relevant
 
 Albright
 
 factors, providing on-the-record analysis of each relevant factor.
 
 Sturgis,
 
 792 So.2d at 1025 (¶21) (citing
 
 Powell v. Ayars,
 
 792 So.2d 240, 244 (¶ 8) (Miss.2001)) (reversible error to fail to do an on-the-record analysis using Albright). He based his ultimate determination on the totality of the circumstances and the “polestar consideration” — the best interests of the children.
 
 Albright,
 
 437 So.2d at 1005.
 

 ¶ 27. Lisa challenges the chancellor’s analysis of the following nine factors: (1) parenting skills, (2) the physical and mental health and age of the parent, (3) the emotional ties of parent and child, (4) moral fitness of the parents, (5) stability of the home environment, (6) age, health, and sex of the child, (7) continuity of care, (8)
 
 *1228
 
 home, school, and community of record, and (9) preference of the child.
 

 ¶28. Regarding the first five factors, Lisa argues the chancellor came to the wrong conclusion on each of these factors because of his erroneous treatment of the GAL’s recommendations, Karen’s letter, and Jeremy’s past behavior. Because we found no error in the chancellor’s evaluation of this evidence, we find no error in his assessment of these factors.
 

 ¶ 29. Lisa also argues the chancellor erred in finding the factor regarding age, health, and sex of the child neutral because he failed to consider the tender-years doctrine. Because at the time of the modification hearing her daughter was seven and her son was four, she claims their tender years should favored her.
 

 ¶30. The tender-years doctrine has traditionally provided that if a “child is of such tender age as to require the mother’s care for his or her physical welfare, he or she should be awarded to the mother’s custody....”
 
 Montgomery v. Montgomery,
 
 20 So.3d 39, 44 (¶ 22) (Miss.Ct.App.2009) (quoting
 
 Gilliland v. Gilliland,
 
 969 So.2d 56, 66 (¶ 32) (Miss.Ct.App.2007)). But “[m]anifest error does not arise simply from failing to give custody of children of tender years to their mother.”
 
 Steverson v. Steverson,
 
 846 So.2d 304, 306 (¶ 8) (Miss.Ct.App.2003). “Chancellors are required to weigh a number of factors, of which age is only one.”
 
 Id.
 

 ¶ 31. Further, “the supreme court has made clear that the tender-years doctrine has been diminished somewhat in recent years and is no longer absolute.”
 
 Montgomery,
 
 20 So.3d at 44 (¶ 22) (citing
 
 Copeland v. Copeland,
 
 904 So.2d 1066, 1075 (¶¶ 34-35) (Miss.2004)). The doctrine has been weakened to where it is now only a presumption.
 
 Law v. Page,
 
 618 So.2d 96, 101 (Miss.1993). “The doctrine has become even less binding when the child is male.”
 
 Id.
 
 And “a child is no longer of tender years when that child can be equally cared for by persons other than the mother.”
 
 Mercier v. Mercier,
 
 717 So.2d 304, 307 (¶ 15) (Miss.1998) (citation omitted) (finding seven-year-old to be “long past the age that requires this type of special care from her mother”).
 

 ¶ 32. As
 
 Mercier
 
 illustrates, at seven years old, Julianna would likely be deemed past the age of needing her mother’s special care.
 
 Id.
 
 And although Jacob was only four, the tender-years doctrine is perhaps even less binding because he is male.
 
 Montgomery,
 
 20 So.3d at 44 (¶ 22). Had the chancellor applied the tender-years doctrine, precedent indicates that its application would not mandate a finding in Lisa’s favor on this factor.
 

 ¶ 33. The chancellor found the factor of continuity of care to be also neutral. Lisa argues she was the primary caregiver of the children for the majority of their lives—a fact she claims the chancellor ignored. But she provides no evidence to support this allegation and fails to show a manifest factual error. In fact, the record shows
 
 Jeremy
 
 became the primary caregiver in 2007, when the chancellor awarded him temporary custody.
 
 See Swartzfager v. Derrick,
 
 942 So.2d 255, 257-58 (¶¶ 9-10) (Miss.Ct.App.2006) (discussing the legal effect of a prolonged temporary custody award). Therefore, we find no error in the chancellor’s conclusion that this factor favored neither.
 

 ¶ 34. Considering the factor regarding home, school, and community of record, the chancellor found Julianna had improved in school since living with her father full time. Lisa argues the chancellor failed to consider evidence of Lisa’s actions that contributed to her improved grades. The chancellor made a factual determination based on the evidence presented, which we do not second-guess or find erroneous.
 

 
 *1229
 
 ¶ 35. Regarding preference of the child, the chancellor properly found this factor to be irrelevant because neither child was old enough to state a preference.
 
 See
 
 Miss.Code Ann. § 93 — 11—65(l)(a) (Supp. 2010) (statutory allowance for children twelve years or older to state a preference, “[pjrovided ... the court shall find that both parties are fit and proper persons to have custody of the children”). Lisa argues the chancellor, nonetheless, improperly considered this factor because he relied of the GAL report, which found Julianna had a “preference” to live with her father. But the GAL did not conclude Julianna preferred to live with her father. Instead, she observed Julianna was much more comfortable talking about her relationship with Jeremy than talking about Lisa. This was not evidence of Julianna’s preference but instead evidence of her experience with both parents, an important circumstance in determining what was in her and her brother’s best interests.
 

 ¶ 36. Reviewing the chancellor’s analysis under
 
 Albright,
 
 we find no factual or legal errors.
 

 CONCLUSION
 

 ¶ 37. Deciding custody of children is perhaps one of the most difficult decisions our courts must make.
 
 [3]
 
 The task here was no doubt made more difficult by two parents whose pettiness, poor behavior, and disagreements are prominently highlighted. We know and accept that there are times when people cannot agree. For this reason, we have courts to decide these tough cases. We are also quite cognizant that there is “no mathematical formula for deciding such cases.”
 
 [4]
 
 Even when a chancellor sensitively assesses
 
 Albright
 
 and its progeny, “the best the judiciary can offer is a good guess.”
 
 [5]
 

 ¶ 38. Though the chancellor here was faced with a very close case, we find substantial evidence supported his determination that there had been a material change in circumstances. We also find no manifest error in his decision that it was in the children’s best interests that permanent physical custody be awarded to Jeremy. We therefore affirm the chancellor’s modification of custody.
 

 ¶ 39. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR. KING, C.J., AND BARNES, J., CONCUR IN RESULT ONLY.
 

 [1]
 

 .
 
 Albright v. Albright, 437
 
 So.2d 1003, 1005 (Miss.1983).
 

 [2]
 

 . The GAL thought the employment factor slightly favored Lisa, while the chancellor found this facts was neutral. The GAL thought both parents were equally morally fit, while the chancellor found this factor favored Jeremy. And the GAL and the chancellor differed on what other factors were relevant in reaching the final conclusion Jeremy should be awarded custody.
 

 [3]
 

 .
 
 Brewer v. Brewer,
 
 919 So.2d 135, 141 (¶21) (Miss.Ct.App.2005).
 

 [4]
 

 .
 
 Buchanan v. Buchanan,
 
 587 So.2d 892, 897 (Miss.1991).
 

 [5]
 

 .Id.